# The President's Authority to Order Export of Special Nuclear Material Under the Atomic Energy Act of 1954

The President has the power to order exports of special nuclear material under § 126 of the Atomic Energy Act of 1954, as amended, whenever he determines that "withholding the proposed export would be seriously prejudicial to the achievement of United States non-proliferation objectives, or would otherwise jeopardize the common defense and security."

The full-scope safeguards criterion of § 128, which applies to exports of special nuclear material to non-nuclear weapon states, is binding only on the Nuclear Regulatory Commission. While the President may take into account the expression of congressional policy contained in § 128 in deciding to order an export under § 126, including its affordance of a grace period, he is not bound by it.

June 6, 1980

## MEMORANDUM OPINION FOR
## THE COUNSEL TO THE PRESIDENT

This responds to your request for our opinion whether § 128 of the Atomic Energy Act of 1954, as amended by the Nuclear Non-proliferation Act of 1978, 42 U.S.C. § 2157, imposes any limitation on exercise by the President of his power under § 126(b)(2) of that Act, 42 U.S.C. § 2155(b)(2), to order export of special nuclear material for which the Nuclear Regulatory Commission (NRC) has not issued a license on the stated ground that it could not make the necessary statutory determinations. The issue arises because the NRC concluded that the grace period in § 128 did not apply to two license applications for export of special nuclear material for the Tarapur reactors in India and, therefore, the licenses could not be granted because India has not agreed to the full-scope safeguards required by § 128.[1] You also asked whether a presidential order under § 126(b)(2) that the export go forward is, in effect, also a decision that the full-scope safeguards requirement in § 128 either does not apply because of the statutory grace period or is waived by the President's action. Finally, you have requested our views on whether the President may rely on his interpretation of the grace period to order the export.

---

[1] The Commission was "also unable to find that the two fuel applications satisfy the requirements of Section 127 of the Atomic Energy Act." *In the Matter of Edlow International Co.* 11 N.R.C. 680, 682 (1980).

We conclude that the full-scope safeguards criterion of § 128 is binding only on the NRC. The President may take the expression of congressional policy in § 128 into account in deciding whether to order the export but he is not bound by it.[2] The exclusive criterion binding on the President is that of § 126(b)(2) "that withholding the proposed export would be seriously prejudicial to the achievement of United States non-proliferation objectives, or would otherwise jeopardize the common defense and security."

This presidential finding is the same as that which, pursuant to § 128(b)(1), could be submitted by the President to the NRC to waive the full-scope safeguards criterion during the NRC's consideration of a license for exports to which § 128 applies. However, when the presidential finding is made under § 126 after the NRC has refused to issue a license, it is not necessarily a commentary on the full-scope safeguards criterion. Therefore, it is not necessary for the President to resolve the question whether the full-scope safeguards of § 128 apply in order to decide that the export should go forward pursuant to his finding under § 126. Of course, the President may base his conclusion "that withholding the proposed export would be seriously prejudicial to the achievement of United States non-proliferation objectives, or would otherwise jeopardize the common defense and security" on his determination that the export application comes within the spirit of the grace period concept that underlies § 128.

Section 126 provides that no license for the export of any special nuclear material may be issued by the NRC until the Secretary of State has notified the NRC that it is the judgment of the Executive branch that the proposed export will not be inimical to the common defense and security. The Secretary of State must "specifically address the extent to which the export criteria then in effect are met and the extent to which the cooperating party has adhered to the provisions of the applicable agreement for cooperation." *See* § 126(a)(1).

The NRC may grant requests for export licenses upon a determination that all applicable statutory requirements have been met. *See* § 126(b)(1). Section 126(b)(2) provides that:

> If, after receiving the executive branch judgment that the issuance of a proposed export license will not be inimical to the common defense and security, the Commission does not issue the proposed license on a timely basis because it is unable to make the statutory determinations required under this chapter, the Commission shall publicly issue its decision to that effect, and shall submit the license application to the President . . . If, after receiving the proposed license application and reviewing the Commission's

[2] The same is true of those criteria found in § 127, 42 U.S.C. § 2156.

decision, the President determines that withholding the proposed export would be seriously prejudicial to the achievement of United States non-proliferation objectives, or would otherwise jeopardize the common defense and security, the proposed export may be authorized by Executive order.[3]

The criteria governing exports for peaceful nuclear uses from the United States of special nuclear material are set forth in § 127, 42 U.S.C. § 2156, and involve such matters as application of International Atomic Energy Agency (IAEA) safeguards on the particular material exported, physical security measures, and limitation on retransfers. An additional criterion applicable to exports to non-nuclear weapon states[4] is that IAEA safeguards must be "maintained with respect to all peaceful nuclear activities in, under the jurisdiction of, or carried out under the control of such state at the time of export." See § 128(a)(1). This additional criterion, known as full-scope safeguards, applies only to an application "which is filed after eighteen months from March 10, 1978." See § 128(b). The full-scope safeguards requirement may be waived for applications filed after this grace period expires if the licensing agency is "notified that the President has determined that failure to approve an export to which [the full-scope safeguards criterion] applies because such criterion has not yet been met would be seriously prejudicial to the achievement of United States non-proliferation objectives or otherwise jeopardize the common defense and security." See § 128(b)(1). Section 128 contains a provision requiring submission of the President's determination to Congress similar to that contained in § 126.

Section 126(b)(2) gives the President broad power to order an export for foreign policy, national security or other reasons if "the President determines that withholding the proposed export would be seriously prejudicial to the achievement of United States non-proliferation objectives, or would otherwise jeopardize the common defense and security."

It might be argued that §§ 127 and 128 apply to all U.S. exports of special nuclear material and thus limit exercise of the President's power under § 126. Section 127 states that "[t]he United States adopts the following criteria which, in addition to other requirements of law, will govern exports." Section 128(a) provides that "no such export" shall be made unless it meets the criteria; the President is charged with seeking

---

[3] This section provides that the executive order shall be submitted to Congress for 60 days of continuous session and the export shall not occur if, during the 60 days, Congress passes a concurrent resolution opposing it. We do not now comment on the constitutionality of this legislative veto provision.

[4] A non-nuclear weapon state is one that did not explode a nuclear explosive device prior to January 1, 1967. Article IX, Treaty on the Non-Proliferation of Nuclear Weapons, *opened for signature* July 1, 1968, 21 U.S.T. 483, T.I.A.S. No. 6839, 729 U.N.T.S. 161 (entered into force March 5, 1970). India falls in this category because it did not explode such a device until 1974.

to achieve adherence to the criteria.[5] We believe, however, that reading the criteria in §§ 127 and 128 as binding on the President would be incompatible with the President's responsibilities set forth in § 126. Our view is supported by members of the NRC, who have continuously and repeatedly recognized that the President's power under § 126 is not constrained by the criteria set forth in §§ 127 and 128.[6] As was explained by the Deputy to the Undersecretary of State for Security Assistance, Science and Technology, when he testified before the House Subcommittee considering the non-proliferation Act, "[w]e sometimes make the mistake of assuming that nuclear export policy and nonproliferation policy are the same thing. They are clearly not. Nuclear export policy is only part of the larger nonproliferation policy." [7]

In sum, it is our conclusion that the President is empowered to order the export of special nuclear material to India in response to the pending applications upon his determination "that withholding the proposed export would be seriously prejudicial to the achievement of United States non-proliferation objectives, or would otherwise jeopardize the common defense and security." *See* § 126(b)(2). That is the sole condition for the exercise of the President's power.

The President may base this presidential finding on his conclusion that the export applications in question come within a grace period concept which is a part of the United States policy on non-proliferation and which formed the basis for the exception embodied in § 128 to the full-scope safeguards criterion for NRC-licensed exports.[8] The President is free to reach this conclusion notwithstanding the NRC decision that, under its interpretation of § 128, the statutory requirements for the NRC to find an exception to the full-scope safeguards criterion have not been met. That NRC decision is irrelevant to the question of the President's authority under § 126 to order this export. Section 128 simply does not restrict the President's authority.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[5] The House Report on the Act states that the criteria "will apply uniformly to all U.S. nuclear exports." H.R. Rep. No. 587, 95th Cong., 1st Sess. 23 (1977). The same Report explains, however, that the bill "will insure that when all statutory standards have been met, export licenses will be issued—or, if the judgment of the Executive Branch and the independent Nuclear Regulatory Commission should differ, that a workable mechanism exists for resolving the dispute." *Id.* at 6.

[6] *See, e.g.,* Separate Views of Commissioners Gilinsky and Bradford on XSNM-1222, 9 NRC 209, 251 (1979); Separate Views of Commissioners Bradford and Gilinsky on XSNM-1060, 7 N.R.C. 436, 445 (1978); Statement of J. Hendrie, Chairman, NRC, S. Rep. No. 467, 95th Cong., 1st Sess. 112 (1977).

[7] *The Nuclear Antiproliferation Act of 1977, Hearings on H.R. 8638 Before the Subcomms. on International Security and Scientific Affairs and on International Economic Policy and Trade of the House Comm. on International Relations,* 95th Cong., 1st Sess. 108 (1977).

[8] The statute itself contemplates that the President will state the reasons for his action in his communication to Congress. Section 126(b)(2) requires submission to Congress of the "Executive order, together with his explanation of why, in light of the Commission's decision, the export should nonetheless be made."